UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Southern Minnesota Beet Sugar Cooperative, | Case No. 17-cv-5552 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Agri Systems d/b/a ASI Industrial, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant Agri Systems's motion for partial summary judgment. (Dkt. 26.) For the reasons addressed below, Agri Systems's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Southern Minnesota Beet Sugar Cooperative (SMBSC) is a Minnesota cooperative that processes sugar beets for sugar production. Defendant Agri Systems (ASI) is a Montana corporation that designs and constructs storage facilities.

In April 2014, SMBSC and ASI entered into a contract, the Design-Build Agreement (Agreement), for ASI to design and construct six sugar-storage silos for SMBSC's use. An integral part of the silo design is the reclaimer system, a device that empties the sugar stored within the silo. A reclaimer stirs the sugar so as to move the sugar from the perimeter to the center of the silo so that the sugar flows out of the silo during the emptying process. The type of reclaimer system at issue here is a "top-down" reclaimer, which stirs the sugar from the top of the silo while the sugar empties from the

bottom. A top-down reclaimer system presents the risk that machinery will be sucked into the sugar as it is stirred.

The reclaimer system designed by ASI for SMBSC's silos had a T-shaped walkway—the gantry—that hung from a circular rail attached to the perimeter of the silo. Attached to the reclaimer system were rotating trolleys, wheeled devices through which a large metal pin was inserted, that moved along the track. The reclaimer device hung from cables attached to the rotating trolleys that pulled the reclaimer through the sugar at the top of the silo. The trolleys that ASI selected for the reclaimer system included a pin that was parallel to the reclaimer's direction of travel, rather than perpendicular to it.

The silo project was completed in the summer or fall of 2015. On December 30, 2015, the reclaimer system in one of the six new ASI silos fell to the bottom of the silo into the sugar. SMBSC ceased using the five remaining silos, sought alternative storage options, and subsequently found replacement storage for the sugar in Eaton, Colorado, and a market sale in Atlanta, Georgia. SMBSC shipped the sugar to those destinations and sent ASI the invoice.

After several attempts to repair the reclaimer system and resolve the areas of dispute between the parties, SMBSC commenced this lawsuit against ASI. SMBSC's complaint alleges six counts: (I) breach of contract – failure to perform; (II) breach of express warranty; (III) breach of implied warranty; (IV) contract void as against SMBSC; (V) professional negligence; and (VI) product defect. ASI now moves for summary judgment on Counts III through VI of SMBSC's complaint.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A district court views the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Krenick v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The moving party bears the initial burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When this burden is met, to defeat the motion, the nonmoving party must cite "particular parts of materials in the record" that support the contention that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1)(A).[1]

**I. SMBSC's Breach-of-Implied-Warranty Claim (Count III)**

ASI seeks summary judgment on SMBSC's breach-of-implied-warranty claim. Under Minnesota law, "[t]o establish breach of an implied warranty of fitness for a particular purpose, a plaintiff must prove that: (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish suitable goods; [and] (3) the buyer actually relied on the seller's skill or judgment." *Travelers Prop. Cas. Co. of Am. v. Saint-Gobain Tech. Fabrics Canada Ltd.*, 474 F. Supp. 2d 1075, 1084 (D. Minn. 2007) (citing *Willmar Cookie Co. v. Pippin Pecan Co.*, 357 N.W.2d 111, 115 (Minn. Ct. App. 1984); Minn. Stat. § 336.2-315). ASI does not argue that it is entitled to judgment as a matter of law

---

[1] The parties do not dispute that Minnesota law governs the parties' claims.

based on the elements of this claim. Instead, ASI seeks summary judgment on three alternative grounds.

First, ASI maintains that the Agreement is not governed by the Uniform Commercial Code (UCC). Rather, because the Agreement is a contract for services, not goods, the Agreement's implied warranty disclaimer controls and SMBSC's breach-of-implied-warranty claim must fail, according to ASI. Minnesota has incorporated the UCC into Minnesota laws pertaining to contracts for the sale of goods. *See* Minn. Stat. § 336.2-102. When a "hybrid" contract—a contract involving both the sale of goods and the provision of services—is at issue, the "predominant factor" test determines whether the contract should be treated as one for goods or for services. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 386 (Minn. Ct. App. 2004). This test asks "whether the predominant factor in the transaction is the transfer of goods or the provision of services," assessing relevant factors such as "the language of the contract, the business of the supplier, and the 'intrinsic worth' of the goods involved." *Id*. "In practice, courts generally rely on the relative costs of the services and the goods" to determine the primary purpose of the contract. *Id*. at 387.

When the predominant factor test is applied here, the Agreement is a contract for goods, which is governed by the UCC. The purpose and central focus of the contract are the procurement of six sugar-storage silos, a good. The cost of materials used to construct the silos was vastly higher than the labor, engineering, and construction costs, a consideration that supports the conclusion that the Agreement is a contract for goods.

4

These two factors outweigh the factors on which ASI relies when asserting that the Agreement is one for services. In sum, the UCC governs this contract.

Second, even if the UCC controls, ASI argues, it is entitled to summary judgment because the Agreement's provision waiving consequential damages bars recovery of the approximately $1,700,000 sought under the breach-of-contract claim. SMBSC counters that the damages it seeks under this claim are cover costs, which are distinct from consequential damages. Under Minnesota law, consequential damages are damages "that do not arise directly according to the usual course of things from the breach of contract itself." *Kleven v. Geigy Agric. Chems.*, 227 N.W.2d 566, 569 (Minn. 1975) (internal quotation marks omitted). Rather, consequential damages arise from "the consequence of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made." *Id*. (internal quotation marks omitted). The UCC's definition of consequential damages includes "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Minn. Stat. § 336.2-715(2)(a). Under the UCC, "cover" costs are the costs of goods purchased or contracted for in substitution for those due from the seller, provided the buyer incurs those costs in good faith and without unreasonable delay. *See id*. § 336.2-712(1).

Here, the costs SMBSC seeks to recover are cover costs, not consequential damages. SMBSC and ASI contracted for silos in which SMBSC would store sugar. When viewed in the light most favorable to SMBSC, as the Court must, a reasonable

5

factfinder could determine that SMBSC sought "cover" when seeking replacement storage options after the storage silos that SMBSC bought from ASI were no longer usable for that purpose. Likewise, a reasonable factfinder could conclude that SMBSC sought "cover" storage in good faith and without reasonable delay. As such, ASI has not demonstrated that it is entitled to summary judgment on this basis.

Third, ASI maintains that the parties waived any implied warranties in the Agreement, regardless of whether the UCC applies. SMBSC disagrees, arguing that the disclaimer applies only to implied warranties that are unrelated to design defects, which are governed by another provision in the Agreement. The relevant Agreement provision, Section 3.10.1, states:

> Owner accepts the manufacturer warranties as its sole and exclusive remedy regarding defects or claims arising from or relating to the quality of materials or equipment. This warranty expressly disclaims and waives all implied warranties including but not limited to merchantability and fitness for a particular purpose. . . . Nothing in this warranty applies to professional design services, which are separately covered by the standard of care.

The interpretation of an unambiguous contract, as well as the determination of whether a contract is ambiguous, present questions of law for the district court. *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). Here, the language of the Agreement is unambiguous insofar as the provision disclaims all implied warranties *except* those related to "professional design services." What remains in dispute is whether the breach at issue here relates to a design defect or a workmanship issue. As this is a fact question—and ASI has not demonstrated that this

question is either undisputed or immaterial—summary judgment is inappropriate on this issue.

ASI has not advanced any other argument as to why it merits summary judgment on the breach-of-implied-warranty claim. For these reasons, the Court denies ASI's motion for summary judgment on Count III of SMBSC's complaint.

## II. SMBSC's Void-Contract Claim (Count IV)

ASI next asserts that it is entitled to summary judgment on SMBSC's void-contract claim. SMBSC has not identified any genuine dispute of material fact pertaining to this claim, *see* Fed. R. Civ. P. 56(c)(1)(A), and concedes that dismissal of the claim is warranted. When asked by the Court at the hearing on ASI's motion, SMBSC agreed that ASI is entitled to judgment as a matter of law on Count IV. For these reasons, the Court grants ASI's motion for summary judgment on Count IV of SMBSC's complaint.

## III. SMBSC's Alternative Tort Claims (Counts V and VI)

As to the alternative tort claims pleaded by SMBSC in the complaint, Counts V and VI, ASI also seeks summary judgment in its favor. "[W]hen a plaintiff seeks to recover damages for an alleged breach of contract," Minnesota law limits the lawsuit "to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975). Without more, "the mere existence of a governing contract between the parties does not preempt or eliminate the possibility of a tort claim." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 597 (D. Minn. 2014). Rather, when "a tort claim is based on a breach of duty that is

indistinguishable from the breach of contract, the tort claim will fail." *Id*. (internal quotation marks omitted). But when a relationship exists from which a legal duty arises absent enforcement of the contract promise, then "the tort claim is viable." *Id*.

### A. Professional-Negligence Claim (Count V)

ASI seeks summary judgment on SMBSC's professional-negligence claim. Minnesota common law imposes an obligation on professionals, such as engineers, to perform their services with reasonable care and competence and imposes liability for damages that arise from the failure to do so. *See Gammel v. Ernst & Ernst*, 72 N.W.2d 364, 367 (Minn. 1955). To sustain an action for professional negligence, SMBSC must prove (1) the existence of a duty, (2) a breach of that duty, (3) that ASI's negligence was the proximate cause of SMBSC's damages, and (4) that a different outcome would have been reached but for ASI's negligence. *See Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006). A person who undertakes to provide professional services has a duty to the recipient of the professional services to exercise such care, skill, and diligence as a person in that profession ordinarily exercises under like circumstances. *See City of Eveleth v. Ruble*, 225 N.W.2d 521, 524 (Minn. 1974).

ASI argues that SMBSC's professional negligence claim is barred because the alleged acts of professional negligence arise out of the Agreement and are, therefore, the grounds for SMBSC's contract claims. ASI's argument is unavailing. Professional negligence is an independent tort, under Minnesota law, for which SMBSC can seek recovery. And, even without the enforcement of the contractual obligations at issue here,

8

a relationship between ASI and SMBSC exists that creates the legal duty imposed under a professional standard of care.

In light of the Court's determination that SMBSC's contract claims[2] do not preclude the professional-negligence claim, the issue remains whether ASI is entitled to judgment as a matter of law on SMBSC's professional negligence claim. ASI has not advanced any such argument. That is, ASI has neither asserted nor established the absence of a genuine dispute of material facts as to SMBSC's professional negligence claim; nor has ASI demonstrated why it is entitled to judgment as a matter of law. For these reasons, the Court denies ASI's motion for summary judgment on Count V of SMBSC's complaint.

### B. Product-Defect Claim (Count VI)

Finally, ASI seeks summary judgment on SMBSC's product-defect claim. When "a tort claim is based on a breach of duty that is indistinguishable from the breach of contract, the tort claim will fail." *Zimmerschied*, 49 F. Supp. 3d at 597 (internal quotation marks omitted). SMBSC offers no response to this. But such are the circumstances here. The crux of SMBSC's product-defect claim is a breach of duty that is indistinguishable from SMBSC's breach-of-contract claims (Counts I and II), claims on which ASI has not sought summary judgment. The Court therefore grants ASI's motion for summary judgment on Count VI of SMBSC's complaint.

---

[2] ASI has not sought summary judgment on SMBSC's contract claims.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Agri Systems's (ASI) motion for summary judgment, (Dkt. 26), is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. ASI's motion for summary judgment on Count III, SMBSC's breach-of-implied-warranty claim, is **DENIED**;

2. ASI's motion for summary judgment on Count IV, SMBSC's void-contract claim, is **GRANTED**;

3. ASI's motion for summary judgment on Count V, SMBSC's professional-negligence claim, is **DENIED**;

4. ASI's motion for summary judgment on Count VI, SMBSC's product-defect claim, is **GRANTED**.

Dated: December 17, 2019         s/Wilhelmina M. Wright
                                 Wilhelmina M. Wright
                                 United States District Judge